## MASON v. ANDREWS et al. (No. 3052.)

(Court of Civil Appeals of Texas. Texarkana. April 20, 1925. Rehearing Denied April 23, 1925.)

1. **Vendor and purchaser ⬤➡265(3)—Purchaser of part of tract held not chargeable with prior liens under agreement to apply purchase price on payment of indebtedness.**

Purchaser of part of tract, subject to prior vendor's liens, *held* not to have assumed payment thereof or become chargeable therewith to amount of his notes, under agreement to apply purchase money on payment of indebtedness on entire tract.

2. **Bills and notes ⬤➡313—Unconditional assignee may release notes.**

Where notes were unconditionally assigned, assignee had the right to release them.

Appeal from District Court, Collin County; F. E. Wilson, Judge.

Suit by A. J. Mason against E. F. Andrews, A. F. Yeager, and others. From a judgment for the named defendants, plaintiff appeals. Affirmed.

The appellant brought the suit against E. F. Andrews, A. F. Yeager, and T. R. Fielder, to recover the amount of seven vendor's lien notes, aggregating $4,669.01, and asking the foreclosure of the lien on 81.3 acres of land. The Texas Farm Mortgage Company was made a party defendant, as owning a prior $4,000 lien on the land.

On November 23, 1918. J. H. Collier and wife deeded to E. F. Andrews 81.3 acres of land in Collin county, described in appellant's petition. The consideration for said conveyance was $1,500 in cash; one note for $350, one note for $447.50, eight notes for $500 each, and one note for $4,000. On January 16, 1919, E. F. Andrews and wife gave a deed of trust on said 81.3 acres to the Texas Farm Mortgage Company to secure a note for $4,000, which note was a renewal of the $4,000 note given by Andrews to Collier, and on the same day executed another deed of trust to said Texas Farm Mortgage Company to secure a note for $657.50. On July 1, 1919, E. F. Andrews and wife conveyed to A. F. Yeager 12.11 acres of land, being a part of said. 81.3 acres. The consideration for said conveyance was $350 in cash and six promissory notes aggregating $2,677.50, payable to E. F. Andrews or order; said notes being in the usual form of negotiable vendor's lien notes. On said date, July 1, 1919, Andrews and Yeager entered into an agreement, referred to herein as the escrow agreement; Andrews being designated in the agreement as the party of the first part, and Yeager as the party of the second part. The agreement recited the conveyance of the 12.11 acres by Andrews to Yeager, and the consideration therefor, and then recites the following:

"And whereas, the notes called for in said deed have been executed by the said second party and payable to said first party; and whereas, said first party owes on said land 'a loan of $4,000 and second lien notes amounting to something over $3,500; 'and whereas, it is the intention of both parties hereto that the purchase money to be paid by said second party to said first party is to be applied on the payment of the indebtedness due and owing by said first party on the 81.3-acre tract of land, of which said 12.11 acres is a part, and that the said notes executed by said second party and payable to said first party are nonnegotiable, and noncollectible, except for the purpose of paying on said indebtedness due and owing by first party on said 81.3 acres of land: now, therefore, in consideration of the premises, it is hereby agreed that said notes executed by said second party to said first party are to be placed in escrow in the First National Bank of Farmersville, Tex., with the understanding that same are to be collected as they become due, together with the interest thereon, and that said money is to be applied by the said First National Bank of Farmersville, Tex., on the payment of said indebtedness due and owing by said first party on said 81.3 acres of land."

The escrow agreement contained the further recital:

"It is also further agreed and understood that, should said second party desire to pay all of said notes either in money or by having the same negotiated for the purpose of applying the proceeds thereon on said indebtedness due and owing by said first party on said 81.3 acres of land, then, and in that case, said first party agrees to make sufficient payment on said land that partial releases may be obtained, releasing said 12.11 acres of land from the lien retained on said 81.3 acres of land, so that the said 12.11 acres of land will only be incumbered for the amount due and owing by said second party."

The notes were placed in the bank in accordance with the agreement. On January 3, 1920, E. F. Andrews and wife conveyed to A. J. Mason said 81.3 acres of land, less the 12.11 acres that had been conveyed to Yeager. The deed recited a cash consideration of $600 and the further consideration that Mason assume the nine notes executed by Andrews to Collier. The deed contained this further recital:

"It being understood in assuming the payment of the above notes that the notes as described in a certain deed executed by E. F. Andrews and wife L. C. Andrews to A. F. Yeager, dated the 1st day of July, 1919, by which deed 12.11

acres of land is conveyed, are hereby transferred and assigned unto the said A. J. Mason, and that the said notes and cash consideration as expressed in said deed to said Yeager are to be applied on the payment of said notes so assumed by said A. J. Mason."

On February 10, 1920, A. J. Mason and wife conveyed to T. R. Fielder said 81.3 acres of land, less the 12.11 acres that had been conveyed to Yeager. The deed recited a consideration of $5,000 in cash; one note for $200, and the further consideration that Fielder assume the incumbrance of $7,500 then against the land, the incumbrance being represented by seven notes for $500 each, and the note for $4,000. The deed contained the further recital:

"It being understood that in assuming the payment of the above notes the notes as described in a certain deed executed by E. F. Andrews and wife L. C. Andrews to A. F. Yeager, dated the 1st day of July, 1919, by which deed 12.11 acres of land is conveyed, are hereby transferred and assigned unto the said T. R. Fielder, and that said notes and cash consideration as expressed in said deed to said Yeager are to be applied on the payment of said notes so assumed by said T. R. Fielder."

On January 3, 1921, Yeager paid Fielder $214.20 which amount represented a year's interest on the notes given by Yeager to Andrews. On January 7, 1922, Yeager paid Fielder $214.20, which represented interest on the notes given by Yeager to Andrews. On January 1, 1922, Yeager went to Andrews to obtain a release of the 12.11 acres, in accordance with the escrow agreement, and was informed by Andrews that he had traded the land to Fielder and that the latter had assumed everything. Yeager then went to Fielder to obtain such release, and was informed by Fielder that he could not get the release. Yeager waited a year and again went to Fielder to obtain the release, and was told by Fielder that it would be impossible for him to get the release in accordance with the terms of the escrow agreement. Being unable to secure from Andrews and Fielder a release of the 12.11 acres of land from the lien against the 81.3 acres as per the escrow agreement, Yeager and his wife on January 12, 1923, conveyed to Fielder the 12.11 acres in consideration of Fielder's canceling the said Yeager notes for $2,677.-50. The deed from Yeager to Fielder recited a cash consideration of $1,000 paid by "Yeager." The facts were that, in order to get the release from Fielder, Yeager paid Fielder $1,000 for such release; such payment being made by Yeager's paying a note which Fielder owed to a bank at Farmersville which aggregated $1,000. On the same day that Yeager deeded the 12.11 acres to Fielder, he (Fielder) executed to Yeager a written release, acknowledging the discharge and payment of said Yeager notes for $2,677.50, and

releasing the vendor's lien on the 12.11 acres. Yeager did not know that the notes he had given had been transferred from Andrews to Mason, and from Mason to Fielder, but thought that the record showed that Andrews was the legal holder of the notes, and therefore went to Andrews to get the notes released. The release from Andrews acknowledging payment of the Yeager notes is dated January 12, 1923; the release being in the usual form, discharging the said Yeager notes for $2,677.50, and releasing the 12.11 acres from the vendor's lien securing said notes.

Appellant alleged the execution of the notes by Andrews, and their assumption by Fielder. Appellant further alleged the execution of the deed from Andrews to Yeager, dated July 1, 1919, and the execution by Andrews and Yeager of the said escrow agreement, also dated July 1, 1919, and the execution by Yeager to Andrews of said notes for $2,677.-50, as part of the consideration for said 12.-11 acres of land. Appellant further alleged that, by reason of the execution of said escrow agreement, and by reason of the stipulation in the deed from Andrews to Yeager, the notes executed by Yeager were assigned to the owners of the prior indebtedness existing against said land, and that Yeager was obligated to pay the notes, as they matured, to plaintiff and the Texas Farm Mortgage Company, the holders of the indebtedness then existing against the land; that the agreement so made by Yeager with Andrews was made upon a valuable consideration, to wit, the conveyance of the land; and that said agreement was for the use and benefit of the owners of the indebtedness then existing against said land. Appellant also alleged the release of the Yeager notes by Andrews, and also the release of said notes by Fielder, and asked that such releases be canceled. Appellant prayed for judgment against Yeager, Andrews, and Fielder for the amount of the principal, interest, and attorney's fees due on the seven $500 notes given by Andrews by Collier, for foreclosure of the vendor's lien on the 81.3 acres of land, for cancellation of said releases, and for judgment against Yeager for the amount of the vendor's lien notes executed by him, aggregating $2,677.50, with interest and attorney's fees thereon, and for foreclosure of the vendor's lien on said 12.11 acres of land, the proceeds thereof to be applied to the payment of the indebtedness held by appellant and the Texas Farm Mortgage Company, pro rata, and prayed in the alternative that he have judgment for damages against Yeager for the amount of the principal and interest on the notes executed by him; the same to be applied in satisfaction of the judgment obtained by appellant against defendant Andrews.

Defendant Texas Farm Mortgage Company entered its appearance in said cause, adopted

the allegations of plaintiff's petition, and agreed that, if Yeager was liable to pay the proceeds of the notes executed by him, the amount so paid might be applied in satisfaction of the seven $500 notes held by plaintiff.

Trial was had before the court without a jury, and judgment rendered establishing the liens of the Texas Farm Mortgage Company as first and superior liens, and in favor of appellant A. J. Mason against T. R. Fielder for the amount 'of the seven' $500 notes, aggregating $4,669.01, and foreclosing the vendor's lien on the 81.3 acres. The judgment further decreed that the releases executed by Andrews and Fielder are valid, and denied appellant's prayer for cancellation of same. The judgment further decreed that appellant take nothing as against defendants Yeager and Andrews, and that they recover their costs.

Merritt, Leddy & Merritt, of McKinney, for appellant.

Truett & Neathery, of McKinney, for appellees.

LEVY, J. (after stating the facts, as above). [1] The appellant's propositions in effect present the point in view of appellant's right to recover a personal judgment against A. F. Yeager in the special facts of the case. The determining point is that of whether or not A. F. Yeager assumed to pay $2,677.50 and interest on the seven prior lien notes sued on. Since the evidence is undisputed, as admitted, the question arising is purely one of law. At the time A. F. Yeager purchased the 12.11 acres of the 81.3-acre tract from E. F. Andrews, there were prior outstanding vendor's lien notes against the entire 81.3-acre tract, owing by E. F. Andrews. The consideration to be paid by A. F. Yeager to E. F. Andrews for the 12.11-acre portion was his notes payable to E. F. Andrews, aggregating $2,677.50, and there was no other consideration recited in the deed or agreed upon. Considering such circumstances alone, there was no promise to pay the outstanding lien notes, or any part of them, by A. F. Yeager, and, as a consequence, he could not be liable thereon. He was merely in the legal position of a subsequent purchaser of a part of a tract of land, the whole of which was subject to prior liens enforceable against all of the land. Therefore the liability of A. F. Yeager must rest, if at all, on the collateral agreement in evidence, made between him and his vendor, E. F. Andrews. That agreement expresses the intention and object of the parties as follows:

"It is the intention of both parties hereto that the purchase money to be paid by the second party (Yeager) to the first party (Andrews) is to be applied on the payment of the indebtedness due and owing by said first party (Andrews) on the 81.3 acres, of which the said 12.11 acres are a part, and that said notes, executed by the said second party (Yeager), and payable to said first party (Andrews), are nonnegotiable and noncollectible, except for the purpose of paying on said indebtedness due and owing by the first party (Andrews) on said 81.3 acres of land."

In this intention and purpose, it was then—

"agreed that said notes executed by said second party (Yeager) to said first party (Andrews) are to be placed in escrow in the First National Bank of Farmersville, Texas, with the understanding that same are to be collected as they become due, together with the interest thereon, and that said money is to be applied by said First National Bank of Farmersville, Tex., on the payment of said indebtedness due and owing by said first party (Andrews) on said 81.3 acres of land."

It is evident from the agreement, by intention and effect, that the parties thereto were seeking to have appropriation of payments of the consideration for the 12.11 acres to the reduction pro tanta of the prior incumbrance in order to protect the 12.11 acres. It does not, by intention or effect, undertake to have A. F. Yeager assume the payment of the prior lien or become chargeable with the prior lien debt to the amount of his notes, but solely for the benefit of the purchaser of the 12.11 acres. While, by the performance of the agreement, a benefit may inure to the prior lienholder, yet the agreement, as is evident, was not made for his benefit, and he was not the party intended to be benefited.

[2] The exercise of the right of appropriation of payments belongs exclusively, as a general principle, to the debtor and creditor. 30 Cyc. p. 1250. And, if the appellant became a party to such agreement, it was by reason of the transfer and assignment unto him by E. F. Andrews "of the notes described in a certain deed executed by E. F. Andrews to A. F. Yeager, dated July 1, 1919, by which 12.11 acres of land is conveyed." But, it is admittedly shown, the appellant afterwards "transferred and assigned" unto T. R. Fielder "the notes described in a certain deed executed by E. F. Andrews to A. F. Yeager, dated July 1, 1919, by which deed 12.11 acres is conveyed." T. R. Fielder, while he was the owner and actual holder, as appears, of the notes of A. F. Yeager, entered into an agreement with A. F. Yeager, by which a reconveyance of the 12.11 acres was made and a release and discharge of the notes formerly executed was effected, and, in that respect, the trial court's conclusion is correct that—

"The defendant A. F. Yeager had the legal right to reconvey the land to T. R. Fielder and secure a release and discharge of his notes."

No other parties at that time, except Yeager and Fielder, had a legal interest or right in the collection of the Yeager notes and appropriation of the payments on same. The transfer and assignment of the Yeager notes

by both Andrews and Mason was entirely without words or agreement of limitation, and the legal consequence of an absolute unconditional assignment accompanied by actual delivery, as here, would attach, carrying full right in T. R. Fielder to deal with the same, as well as the security therefor.

The judgment of the trial court was, we conclude, correct, and it should be affirmed, which is accordingly ordered.